## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

NATHAN DANIEL,

        *Plaintiff,*                            **CASE NO.:**

v.

48FORTY SOLUTIONS, LLC,

        *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Nathan Daniel files this action against Defendant 48Forty Solutions, LLC for race discrimination and retaliation in violation of 42 U.S.C. § 1981 as follows:

## PARTIES

1.      Plaintiff is a resident of Duval County, Florida.

2.      Defendant is a Delaware company with its principal place of business in Houston, Texas. Defendant is the nation's largest provider of pallet management services. It operates a network of more than 70 pallet recycling plants.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 42 U.S.C. § 1981.

4.      This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

5.    Pursuant to 28 U.S.C. § 1391, venue is proper in this District because Defendant is subject to personal jurisdiction in this District and because the acts occurred in this District.

## GENERAL ALLEGATIONS

6.    Plaintiff was hired by Pallet Consultants Corp. as a forklift operator in its Jacksonville, Florida warehouse in June 2021.

7.    In 2022, Pallet Consultants Corp. was sold to Defendant, and Plaintiff became an employee of Defendant.

8.    Plaintiff's job duties included transferring completed pallets from the assembly lines to designated areas in the warehouse shipping bay.

9.    Plaintiff excelled. He demonstrated punctuality. He outproduced his peers. He helped out his fellow forklift operators. Despite this, he was subjected to discriminatory and derogatory conduct by a number of his white peers and superiors.

10.    Plaintiff's superiors included **Plant Manager Robert** (last name believed to be Collier) (Plant Manager) and **Supervisor Wade**.

11.    Plant Manager Robert had authority to control the conduct at the Jacksonville plant where Plaintiff worked.

12.    Defendant promoted Supervisor Wade to the role of supervisor following its acquisition of Pallet Consultants Corp.

13.    Supervisor Wade, with the knowledge of Plant Manager Robert, immediately began targeting older black employees, forcing multiple black men out of their jobs, and replacing them with white forklift operators.

2

14.     Plaintiff witnessed Supervisor Robert fire numerous experienced black forklift operators for no reason and replace them with less experienced, white forklift operators.

15.     At one point, Plaintiff complained to another supervisor named Nappo about Wade's conduct. Nappo, who is Hispanic, replied that Supervisor Wade was a racist but there was nothing he (Nappo) could do to stop the harassment.

16.     Plaintiff made repeated verbal complaints to Plant Manager Robert regarding Supervisor Wade's persistent racially-motivated targeting, verbal abuse, and threats of termination.

17.     For example, Supervisor Wade would routinely yell at Plaintiff about the way he stacked pallets (screaming "move that fucking stack right now, I want it moved right fucking now."). This would cause Plaintiff to take time from his main job and move the stacks as demanded. Plaintiff's white peers, often at the same time Plaintiff was being berated, were allowed to stack pallets in a manner identical to Plaintiff without being told to move them.

18.     Plaintiff was also blamed for the placement of pallets by white employees—a fact of which Supervisor Wade was aware.

19.     In October 2023, Plaintiff reached his breaking point. While being berated by Supervisor Wade, he asked Supervisor Wade why he was not screaming at white employees for doing the same thing he was. Supervisor Wade let loose a stream of profanities at Plaintiff, culminating in telling him to "hit the fucking clock right now and go home."

20.     On multiple occasions Plaintiff complained to Plant Manager Robert about Supervisor Wade's persistent targeting, verbal abuse, and threats of termination. And he did the same after being told to clock out by Plant Manager Robert.

21.     During his final complaint, Plaintiff again detailed the persistent racial discrimination aimed at him, including Plant Manager Robert and Supervisor Wade's racist treatment of him.

22.     Plant Manager Robert immediately became irate, pointing his finger in Plaintiff's face and saying he didn't want to hear anything about race. Plant Manager Robert then terminated Plaintiff. As Plaintiff left Plant Manager Robert's office, Supervisor Wade continued to harass Plaintiff and yell at him to "get the fuck away from here."

23.     This was the second time that Plant Manager Robert had terminated a black employee for complaining of race (he did the same in June 2023, although that employee was allowed to come back because Defendant was short staffed).

24.     Plaintiff also endured racial harassment from white coworkers (at minimum, by those named Larry, Troy, and Mike, last names unknown) on a near daily basis. For example, they would stack pallets in Plaintiff's loading zone so as to provoke Supervisor Wade's fury towards Plaintiff. These white co-workers would laugh when Supervisor Wade began taking his anger out on Plaintiff. White co-workers also recognized that Supervisor Wade acted discriminatorily towards black workers and laughed at Plaintiff about it.

25.     Further, when Plaintiff arrived for his shifts early in the morning, he would often find that his white peers on the night shift had left pallets strewn about so that Plaintiff would have to clean up the mess, taking him away from his actual tasks for the day.

26.     The white employees would also park their forklifts in his way when they would take breaks, forcing him to longer routes to perform his job or to take the time to move the forklifts.

27.     White employees also made him unload incoming trucks and carry heavy items on his own.

28.     In other words, Plaintiff's white peers intentionally created extra work to force Plaintiff to do more work and have to work twice as hard during the day to complete his assigned duties.

29.     To further harass Plaintiff, his white peers and supervisors would call him "pop" instead of using his real name. When Plaintiff corrected them, they refused to stop. They would also call him an "old man" and curse at him.

30.     Plaintiff was a diligent and reliable employee with decades of experience operating a forklift. He just wanted to do his job and be treated similarly to his white co-workers.

## COUNT I – VIOLATION OF § 1981 (RACE DISCRIMINATION)

31.     Plaintiff repeats and realleges Paragraphs 1 through 30 as if fully set forth herein.

32.     Plaintiff was discriminated against because of his race.

33.    Plaintiff suffered an adverse employment action when Defendant terminated his employment.

34.    But for Plaintiff's race, Defendant would not have engaged in such conduct.

35.    By discriminating against Plaintiff because of his race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981).

36.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Defendant's management knowingly countenanced or approved of the racial discrimination, as exhibited by, among other things, Defendant's failure to take corrective action against those Company employees who racially harassed Plaintiff and Defendant's decision to terminate Plaintiff.

37.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages including emotional distress, humiliation, loss of dignity, loss of income and benefits, and other damages.

38.    Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## <u>COUNT II –VIOLATION OF § 1981 (RETALIATION)</u>

39.    Plaintiff repeats and realleges Paragraphs 1 through 30 as if fully set forth herein.

40.    Plaintiff repeatedly complained of the racial discrimination from both his peers and his supervisor. He complained to his supervisor about his peers and to the plant manager about his peers and supervisor.

41.    Plaintiff's numerous complaints constituted a protected activity.

42.    For complaining, he was targeted not just by peers but by Supervisor Wade.

43.    Immediately after complaining to Plant Manager Robert about the discriminatory behavior, he was terminated.

44.    He was given no reason for his termination.

45.    But for Plaintiff's race, Defendant would not have engaged in these adverse employment actions.

46.    By retaliating against Plaintiff because his race and his protected activity, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

47.    Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Defendant's management knowingly and directly countenanced or approved of the retaliation against Plaintiff. Indeed, they actively participated in it.

48.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, damages including emotional distress, humiliation, loss of dignity, loss of income and benefits, and other damages.

49.     Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## COUNT III –VIOLATION OF § 1981
## (HOSTILE WORK ENVIRONMENT)

50.     Plaintiff repeats and realleges Paragraphs 1 through 30 as if fully set forth herein.

51.     42 U.S.C. § 1981 prohibited Defendant from discriminating against Plaintiff in the performance, modification, and termination of his employment, as well as the enjoyment of all benefits, privileges, terms, and conditions of his employment.

52.     Plaintiff's harassment was allowed because he is a black man. But for that status, he would have been treated differently by Defendant leading up to and after the reporting of his supervisor's and peers' misconduct.

53.     Plaintiff did not welcome the offensive acts and statements of his peers and supervisors.

54.     Defendant's conduct was severe and pervasive to a degree that it materially altered the terms or conditions of his employment.

55.     Among other factors demonstrating that the work environment had become hostile to Plaintiff, the following occurred:

   a.   Supervisor Wade would routinely yell and curse at Plaintiff for the way he stacked his pallets. Yet, Plaintiff's white peers were allowed to stack their pallets identically with no issue or criticism.

b. Plaintiff was routinely blamed for the placement of pallets by white employees.

c. On a near daily basis Plaintiff's white peers, including Larry, Troy, and Mike, last names unknown, would harass Plaintiff. They would:

    i. stack pallets in Plaintiff's loading zone to provoke Supervisor Wade to yell at Plaintiff;

    ii. laugh at Plaintiff when he was ridiculed for *their* actions or when Supervisor Wade acted discriminatorily towards black employees, including Plaintiff;

    iii. leave pallets from the night shift strewn about and in Plaintiff's way so he would have to take time from his regular duties to clean up the mess;

    iv. park forklifts in Plaintiff's way when they took breaks so he would have to take longer routes to complete his tasks or take time to move the forklifts;

    v. call him "pops" instead of his real name; and

    vi. make Plaintiff carry heavy items on his own that they knew he had trouble lifting.

56. A reasonable person would have found that the offensive acts and statements materially altered the terms or conditions of Plaintiff's employment—and that Plaintiff believed that such conduct materially altered the terms and conditions of his employment.

57.     Defendant knew, or in the exercise of reasonable care should have known, about the hostile work environment.

58.     And yet, Defendant failed to take prompt remedial action to eliminate the hostile work environment.

59.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer, damages including emotional distress, humiliation, loss of dignity, loss of income and benefits, and other damages.

60.     Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests the Court enter judgment in his favor as follows:

a.  Back and front pay resulting from Defendant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

b.  Compensatory damages resulting from Defendant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

c.  Punitive damages to punish Defendant's violations of § 1981 to the fullest extent permitted by law;

d.  Pre-judgment and post-judgment interest;

e.  An award of costs and reasonable attorneys' fees; and

f.  Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims.

Dated: April 19, 2025

Respectfully submitted,

By: */s/ Michael A. Boehringer*
    Michael A. Boehringer
    Florida Bar No.: 1018486
    mboehringer@pollardllc.com

    Christopher S. Prater
    Florida Bar No. 105488
    cprater@pollardllc.com

    Jonathan E. Pollard
    Florida Bar No.: 83613
    jpollard@pollardllc.com

    **Pollard PLLC**
    401 E. Las Olas Blvd., #1400
    Fort Lauderdale, FL 33301
    Telephone: 954-332-2380
    Facsimile: 866-594-5731
    *Attorneys for Plaintiff*